LUPER SCHUSTER, J.
{¶ 1} Defendant-appellant, Johnrose P. Encarnacion, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm.
I. Facts and Procedural History
{¶ 2} In December 2015, Encarnacion was indicted on one count of aggravated robbery in violation of R.C. 2911.01, with a firearm specification, and two counts of robbery in violation of R.C. 2911.02, both with a firearm specification. The matter proceeded to a jury trial in September 2016.
{¶ 3} Emile Ndiaye testified that he was robbed at gunpoint on December 18, 2015, when he was walking from his vehicle to his friend's home. Three individuals approached Ndiaye during the early hours of that day and directed him to lie down. One of the individuals pointed a handgun at Ndiaye's head, and the assailants went through his pockets, took his wallet and other personal items, and then drove away in his vehicle. The assailant who pointed the gun at Ndiaye had a tattoo on his neck. Immediately after the robbery, Ndiaye ran to a service station and called 911. When the police arrived, he gave them a general description of the robbers. Based on the information Ndiaye provided, the police apprehended Encarnacion and Kennitha Rice as they were walking away from Ndiaye's vehicle at a nearby apartment complex. The police took Ndiaye to that location for a showup identification. Ndiaye indicated that the neck tattoo on Encarnacion was the same tattoo as he saw on the robber who pointed the handgun at his head. Ndiaye was equivocal in identifying Encarnacion as being involved in the robbery, stating that it "might be him, it might not be him"-he was "not sure." (Sept. 19, 2016 Tr. Vol. 1 at 172.) However, Ndiaye also testified that, based on his observation of Encarnacion's neck tattoo, he was sure that Encarnacion was "the one that robbed [him]." (Tr. Vol. 1 at 179.)
{¶ 4} Rice testified that she participated in the robbery of Ndiaye with Encarnacion. Rice said Encarnacion was "like a brother" to her. (Sept. 21, 2016 Tr. Vol. 2 at 209.) Rice and Encarnacion had conversations about their need for more money, and about possibly committing robberies to acquire money. Before the robbery of *429 Ndiaye, Encarnacion and an individual named "B" picked Rice up in a vehicle. They drove north to an apartment complex, exited the vehicle, and proceeded to rob Ndiaye. According to Rice, B had the handgun and he directed Ndiaye to the ground. Rice testified that Encarnacion was "standing back" approximately six to eight feet from Ndiaye. (Tr. Vol. 2 at 235.) Immediately after the robbery, B and Encarnacion retrieved Ndiaye's vehicle from the parking lot and brought it back to pick up Rice who had remained at the spot of the robbery. Rice got into the vehicle, and Encarnacion drove away. Encarnacion parked the vehicle at a nearby apartment complex, and B fled on foot. Shortly thereafter, a police officer saw Rice and Encarnacion walking away from Ndiaye's vehicle and ordered them to show their hands and drop to the ground. Rice and Encarnacion were handcuffed and taken into custody. As part of her plea agreement with the state, Rice agreed to testify in this case. B was not apprehended.
{¶ 5} Encarnacion did not testify, but his videotaped interview with a police detective on the day of the robbery was played for the jury and admitted into evidence. In that interview, Encarnacion denied any involvement in the robbery, and stated that he was at the home of his close friend Aissha Hough at the time of the robbery.
{¶ 6} Following deliberations, the jury found Encarnacion guilty as charged. The convictions merged for the purpose of sentencing, and Encarnacion was sentenced on his conviction for aggravated robbery, with a firearm specification. Encarnacion timely appeals.
II. Assignment of Error
{¶ 7} Encarnacion assigns the following error for our review:
Appellant's convictions should be reversed due to prosecutorial misconduct in closing argument.
III. Discussion
{¶ 8} In his sole assignment of error, Encarnacion argues that his convictions should be reversed because the prosecutor engaged in misconduct during closing argument. This assignment of error lacks merit.
{¶ 9} Prosecutors are afforded considerable latitude in closing argument. State v. Ballew , 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). A prosecutor may comment on " 'what the evidence has shown and what reasonable inferences may be drawn therefrom.' " State v. Lott , 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting State v. Stephens , 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970) ; see State v. Leonard , 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 159 ("A prosecutor may state an opinion if based on evidence presented at trial."). However, a prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused, or allude to matters that are not supported by admissible evidence. State v. Smith , 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). Thus, a prosecutor should not make references to his or her personal experiences. State v. Stevens , 2016-Ohio-446, 58 N.E.3d 584, ¶ 77.
{¶ 10} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. Smith at 14, 470 N.E.2d 883. A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning. State v. Noling , 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 94, citing *430 Donnelly v. DeChristoforo , 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred. Noling at ¶ 94, citing State v. Frazier , 73 Ohio St.3d 323, 342, 652 N.E.2d 1000 (1995). A prosecutor's conduct cannot be grounds for error unless such conduct deprived the defendant of a fair trial. State v. Evans , 63 Ohio St.3d 231, 240, 586 N.E.2d 1042 (1992). Lastly, when there is no objection to alleged prosecutorial misconduct, we must review under the stringent plain error standard. Crim.R. 52(B) ; see Evans at 240, 586 N.E.2d 1042.
{¶ 11} Encarnacion asserts that the prosecutor made four improper statements during closing argument, and that these statements deprived him of a fair trial. Encarnacion argues that two of the prosecutor's statements went beyond the evidence presented at trial. First, in response to a challenge to the identification procedure used by the police, the prosecutor said, "There should have been a lineup. Okay. How long do you think it would have taken to find even four or five other people that look similar enough to that man that we would do a lineup? Where do you find them? Is that reasonable? I've been doing this 38 years. I've never heard of a lineup." (Sept. 23, 2016 Tr. Vol. 4 at 475.) Second, in response to Encarnacion's challenge to the lack of DNA and fingerprint evidence presented by the state, the prosecutor said, "I've been doing this so long that we didn't have DNA when I started. I've been doing it so long we didn't have phones. We didn't have these things when I started. I am not so old as to not have experienced fingerprints when I started. So back when I started, here was the argument. If you don't have the defendant's fingerprint on everything then the police didn't do their job properly. Folks, the truth is I've been sitting at this table for a week. You may or may not find my fingerprint on anything over there." (Tr. Vol. 4 at 479.) Encarnacion acknowledges that his trial counsel did not object to these statements about lineups, DNA, and fingerprints.
{¶ 12} Although the prosecutor's statements regarding his personal experiences and observations about lineups and evidence collection were not based on evidence presented at trial, any related error was not plain error. Under Crim.R. 52(B), an appellate court may take notice of "plain errors" even when "they were not brought to the attention of the court." For an error to constitute "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. State v. Barnes , 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). An appellate court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. State v. Pilgrim , 184 Ohio App.3d 675, 2009-Ohio-5357, 922 N.E.2d 248, ¶ 58 (10th Dist.), citing State v. Saleh , 10th Dist. No. 07AP-431, 2009-Ohio-1542, 2009 WL 840755, ¶ 68. The defendant bears the burden of demonstrating plain error. State v. Perry , 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. Encarnacion has not met this burden as to the prosecutor's statements regarding lineups, DNA, and fingerprints.
{¶ 13} The evidence at trial demonstrated that Encarnacion was apprehended near the scene of the robbery and shortly thereafter was presented to the victim, Ndiaye, for a showup identification. However, the state did not present DNA or fingerprint evidence. In closing argument, Encarnacion's counsel criticized the identification procedure used here and argued *431 that police should have conducted a photo or live lineup instead. His counsel also argued that, without DNA and fingerprint evidence to corroborate witness testimony, the state could not prove its case beyond a reasonable doubt. Thus, the prosecutor's comments regarding lineups, DNA, and fingerprints were in response to defense counsel's argument that police should have done more as part of its investigation of the robbery.
{¶ 14} While the prosecutor should not have interjected either his personal experience regarding the use of live lineups as an identification procedure or other observations not based on evidence, his comments cannot be reasonably viewed as affecting the outcome of the trial. The trial court instructed the jury that closing arguments of counsel are not evidence. We presume the jury followed this instruction. Leonard at ¶ 157. His convictions were primarily based on the testimony of Ndiaye and Rice describing the robbery and identifying Encarnacion as one of the perpetrators of the robbery. In this appeal, Encarnacion does not challenge the credibility of those witnesses. Therefore, regardless of whether the prosecutor's comments were improper, Encarnacion has not shown that the results of the trial would have been different had the prosecutor not made such comments.
{¶ 15} Encarnacion also argues the prosecutor attempted to shift the burden of proof to him during closing argument. He argues it was improper for the prosecutor to state: "But if he thinks his phone records will show you something-now, mind you, he's got no burden to do anything but he's allowed to do things. He can show you the phone records." (Tr. Vol. 4 at 486.) This statement was made in response to defense counsel's assertion that the state should have subpoenaed telephone records to confirm Encarnacion's involvement in the robbery. Encarnacion also cites the following statement as improperly shifting the burden of proof: "Alibi is simply a Latin word that means elsewhere. It means that he was someplace else and that he couldn't have committed the crime because he was someplace else. He told the detective that that night. He talked about-and I may have the first name wrong-I think it's Aissha, the last name is Howe [sic]. He knows her like a sister. If somebody wanted to do something extra to help you with this, where's she?" (Tr. Vol. 4 at 494.) Encarnacion's counsel objected to these statements and the trial court overruled the objections.
{¶ 16} Contrary to Encarnacion's argument, the prosecutor did not improperly attempt to shift the burden of proof to him. "The prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case." State v. Williams , 23 Ohio St.3d 16, 20, 490 N.E.2d 906 (1986). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." State v. Collins , 89 Ohio St.3d 524, 527-28, 733 N.E.2d 1118 (2000). Hence, a prosecutor is not precluded "from challenging the weight of the evidence offered in support of an exculpatory theory presented by the defense [or] arguing the defendant's failure to provide evidence to support proffered theories of excuse or innocence." Id. "Pointing out the failure of a defendant to subpoena witnesses to prove his theory of the case does not constitute shifting-of-the-burden misconduct." State v. Leach , 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 48 (1st Dist.). See State v. Petro , 148 Ohio St. 473, 498, 76 N.E.2d 355 (1947) ("[T]he fact that one of the parties fails to call a witness who has some knowledge *432 of the matter under investigation may be commented on."). Therefore, it was not improper for the prosecutor to comment on the lack of corroborating testimony to support Encarnacion's videotaped explanation to a police detective regarding his whereabouts on the night of the robbery. Nor was it improper for the prosecutor to respond to defense counsel's contention that the state should have subpoenaed telephone records with the argument that he could have provided those records if he believed they would be exculpatory.
{¶ 17} For these reasons, we overrule Encarnacion's sole assignment of error.
IV. Disposition
{¶ 18} Having overruled Encarnacion's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
DORRIAN, J., concurs.
HORTON, J., concurs in judgment only.