[Cite as *State v. Williams*, 2024-Ohio-5076.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :        APPEAL NOS. C-240064
                                                      C-240037
    Plaintiff-Appellee,      :        TRIAL NO.   B-2300129

                                 :

  vs.                            :              *O P I N I O N.*

                                 :

DARRYL WILLIAMS,                 :

    Defendant-Appellant.     :


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: October 23, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp,* for Defendant-Appellant.

**Crouse, Judge.**

{¶1} Defendant-appellant Darryl Williams appeals from the trial court's judgment convicting him of felonious assault. In two assignments of error, he argues that the prosecutor committed misconduct by vouching for the truthfulness and honesty of the State's witnesses and that his conviction was against the manifest weight of the evidence.

{¶2} While we agree that the prosecutor improperly vouched for the credibility of the State's witnesses, Williams, who failed to object to the prosecutor's comments during trial, has not established plain error. We further hold that Williams's conviction was not against the manifest weight of the evidence, and we affirm the trial court's judgment.

## I. Factual and Procedural Background

{¶3} Williams was indicted for felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1). The victim of this offense was S.R.

{¶4} At a jury trial, S.R. testified that she first befriended Williams approximately four-to-five years earlier when she was working as a prostitute. S.R. did not have permanent housing and would stay with Williams for occasional periods of time. She was staying with Williams on January 5, 2023. S.R. testified that, on that date, she and Williams had been drinking and using drugs. After the two engaged in sexual relations, S.R. questioned Williams about the nature of their relationship. In response, Williams hit her and directed his pit bull to "get that bitch." According to S.R., the dog attacked her and she blacked out. She does not recall how long the dog was on top of her.

{¶5}     S.R. went to the hospital after the attack. She testified that she suffered a pinched nerve and a herniated disc, both of which required physical therapy. The nerve damage caused her to continually drop items and experience a sharp pain in her arm. Photographs depicting S.R.'s injuries were admitted into evidence, and S.R. identified bite marks from the pit bull and a swollen eye and lip caused by Williams punching her in the face.

{¶6}     On cross-examination, S.R. testified that she takes medication for bipolar disorder and that she had been off her medication when this incident occurred. She also stated that she was intoxicated at the time of the attack. S.R. denied punching Williams or destroying any of his property prior to the dog's attack. She further testified that Williams's dog is very protective of him.

{¶7}     The State presented additional testimony from James Allen, a bystander who witnessed the dog's attack on S.R. and the events that happened after S.R. blacked out. Allen testified that he did not know either Williams or S.R. prior to the events of January 5, 2023. That morning, Allen had visited a rental property that he owned. While outside the property, he saw the door to a nearby building open and a completely nude woman tossed out of the building. Allen heard a man, whom he identified at trial as Williams, yell, "You stupid bitch. How dare you?" Allen then heard the man say, "get her" and saw a dog exit from the house and jump on the woman. According to Allen, the dog clamped onto the woman's arm while she screamed for the man to halt the attack. The man continued to curse at the woman and stated, "It does what I say do," before going back inside and slamming the door.

{¶8}     Allen testified that the dog continued to gnaw on the woman. Eventually the door opened again, and Williams threw clothes and a suitcase outside before

calling the dog inside. The dog obeyed and released the woman. The woman started to get dressed, yelling and screaming as she did so. According to Allen, the dog was then let back outside with an instruction from Williams to "get her." The dog obeyed and started chewing on the partially clothed woman, causing her to fall to the ground. At that point, Allen called 911. Williams eventually called the dog back inside.

{¶9}　Cincinnati Police Officer Deon Cromwell testified that he responded to a call regarding a pit bull attacking a female subject. Upon arriving at the scene, he saw S.R. lying on the sidewalk and bleeding profusely. Williams came out of his home and spoke to Officer Cromwell, stating that he and S.R. had gotten into an argument after he asked her if she was in love with him. Williams further told Officer Cromwell that S.R. had attacked him and that the dog was defending him. Officer Cromwell testified that he did not recall seeing any injuries on Williams. Video from Officer Cromwell's body-worn camera was admitted and played for the jury. Officer Cromwell agreed on cross-examination that Williams readily provided information and was not stumbling or swaying. And he stated that he never entered Williams's apartment to see if it contained signs of a struggle.

{¶10}　Williams testified that S.R. has stayed with him off and on over the past several years. Williams portrayed S.R. as a violent and destructive person. He testified that she had previously damaged his property when he asked her to move out of his home, and that her violent behavior instigated the events that led to his arrest on January 5, 2023.

{¶11}　According to Williams, S.R. had been drinking and smoking that morning. He testified that she became enraged over what she perceived to be a crude joke told by Williams, and she began attacking him. Williams's dog defended him and

4

bit down on S.R.'s forearm. According to Williams, he was able to wrestle the dog off of S.R. When he told S.R. to leave, she started to fight him again, causing the dog to bite her hand. While Williams attempted to shut the dog in the kitchen, S.R. destroyed his bedroom. She knocked down his television, broke his television stand, broke a table, and threw his glasses. The dog was able to get out of the kitchen, and it entered the bedroom and bit S.R. on the shoulder.

{¶12} While returning the dog to the kitchen, Williams heard banging on his door. He walked S.R. to the door and opened it to find his neighbor Derrick, whom he testified was S.R.'s cousin and the owner of his building. Williams thought it would be best to place S.R. in Derrick's care and to "put her outside." Williams admitted that he was a little rough when doing so, and that S.R. stumbled and fell. After noticing that S.R. was not wearing pants, Williams retrieved some clothing for her.

{¶13} Williams described his dog as a guard dog that was very protective of him, particularly when any aggression was directed his way. He stated that the dog had never previously attacked S.R. and was an obedient dog that listened to his commands. Williams denied ordering the dog to attack S.R.

{¶14} On cross-examination, the State questioned Williams about the discrepancy between the explanation that he provided to Officer Cromwell regarding his fight with S.R. and the explanation that he provided at trial. Williams stated that the incident he relayed to Officer Cromwell had happened a few days earlier. Williams also testified on cross-examination that he had only tossed one outfit and a pair of pajama shorts outside for S.R. He denied throwing out all her belongings.

{¶15} The jury returned a verdict finding Williams guilty of felonious assault. The trial court sentenced Williams to an indefinite term of eight to 12 years' imprisonment. Williams now appeals.

## II. Improper Vouching

{¶16} In his first assignment of error, Williams argues that he was denied a fair trial and due process of law by the State's vouching for the truthfulness and honesty of its witnesses.

{¶17} Williams identifies two instances in which he contends that the prosecutor improperly vouched for the credibility of the State's witnesses during closing argument. The first instance occurred when the prosecutor stated, "Now, [S.R.] was honest," when summarizing S.R.'s testimony. In conjunction with this statement, the prosecutor acknowledged that S.R. admitted to blacking out after drinking and doing drugs and to a lack of recall of all that had happened. The prosecutor commented, "She didn't make up something different. She didn't try to tell you a bunch of details she didn't know about."

{¶18} Williams claims that the second instance of alleged improper vouching occurred when the prosecutor stated:

Ladies and gentlemen, I'm not going to speculate on what went on inside that apartment, but I can tell you that everything matches up with what went on outside of it, and that [S.R.] was truthful, honest, and consistent with what she said.

Mr. Allen, truthful[,] honest, consistent with what he said.

And, Officer Cromwell, truthful, honest, consistent with what he said.

Mr. Williams, inconsistent, not completely honest.

6

No objection was raised to these statements.

{¶19} In reviewing a claim of prosecutorial misconduct, we must determine whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Morrissette*, 2018-Ohio-3917, ¶ 30 (1st Dist).

{¶20} The law is clear that "[i]t is improper for a prosecutor to vouch for the credibility of a witness at trial." *State v. Myers*, 2018-Ohio-1903, ¶ 145; *see State v. Hall,* 2019-Ohio-2985, ¶ 36 (1st Dist.). "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Myers* at ¶ 145. This includes expressing a personal belief or opinion regarding a witness's credibility. *Id.* A prosecutor may, however, "comment on 'considerations that the jury could properly consider in evaluating [a witness's] credibility: his demeanor, consistency, and opportunity to observe, as well as the extent to which other evidence corroborated his testimony.'" (Bracketed text in original.) *State v. Hayes*, 2020-Ohio-5322, ¶ 43 (1st Dist.), quoting *Myers* at ¶ 147.

{¶21} We find no impropriety in the prosecutor's first comment that, "[S.R.] was honest." In context, this statement was made in conjunction with the prosecutor's remark that S.R. admitted she could not remember everything that happened after the dog attacked her. The prosecutor was not vouching for S.R.'s testimony in its entirety, but rather acknowledging that S.R. did not fabricate details and honestly admitted her lack of memory.

{¶22} The latter group of statements made by the prosecutor are more troubling. These statements followed a discussion by the prosecutor about the inconsistencies in Williams's testimony and the fact that Allen's testimony did not

corroborate the testimony offered by Williams. While the prosecutor was permitted to point out the extent to which a witness's testimony was corroborated by other evidence, *see Hayes* at ¶ 43, the prosecutor was not entitled to express his personal belief about a witness's credibility. *See Myers* at ¶ 145.

{¶23} In *State v. Tucker*, 2003-Ohio-6056, ¶ 23 (1st Dist.), this court found that a prosecutor's statement that "they came in here and told the truth" constituted improper vouching. In contrast, the Ohio Supreme Court held that the following statement did not constitute improper vouching: "Did [the witness] have an opportunity to see the things about which he was testifying? He certainly did. Was he consistent? Yes he was. What was his demeanor like? When he came forward . . ., he was very forthcoming." (Ellipsis in original.) *Myers*, 2018-Ohio-1903, at ¶ 146. The court held that this comment pointed out the strength of the witness's testimony based on other evidence presented and did not express the prosecutor's personal opinion. *Id.* at ¶ 147.

{¶24} In *Hayes*, this court reviewed a prosecutor's comment that if a witness was going to lie, then the witness "could have told a better lie." *Hayes*, 2020-Ohio-5322, at ¶ 45 (1st Dist.). We held that this comment was made in response to an attack by defense counsel on the witness's credibility and that it did not express the prosecutor's personal view of the witness's credibility. *Id.* We also reviewed a comment in which the prosecutor asked the jury to consider whether a witness had intended to omit information when placing an emergency call or whether the witness had made a mistake in omitting the information. We again found that this comment was not improper, stating that it "did not express the prosecutor's personal opinion of [the witness's] credibility." *Id.* at ¶ 46.

**{¶25}** The statements in the case at bar are more akin to those in *Tucker* than those in *Myers* and *Hayes*. The prosecutor clearly stated that each of his three witnesses were "honest" and "truthful," and that Williams was "not completely honest." These comments expressed the prosecutor's personal belief. Further, they were given in the State's opening portion of closing arguments and were not made in response to an attack by defense counsel on the credibility of a witness.

**{¶26}** Having held that the prosecutor's remarks constituted improper vouching, we must determine whether the comments impacted Williams's substantial rights. *See Morrissette,* 2018-Ohio-3917, at ¶ 30 (1st Dist.). Williams did not object to any of these statements and has forfeited all but plain error. *Id.* at ¶ 31. To establish plain error, a defendant must show that an error occurred, that the error was obvious, and that it affected the defendant's substantial rights, i.e., that it affected the outcome of the trial. *State v. Sowders*, 2023-Ohio-4498, ¶ 11 (1st Dist.). A defendant meets this last requirement by demonstrating a "reasonable probability" that the outcome of the trial would have been different but for the error. *Id.*

**{¶27}** On this record, we cannot find that there is a reasonable probability that the outcome of the trial would have been different but for the prosecutor's comments vouching for the credibility of the State's witnesses. Williams and S.R. presented differing versions of the events that precipitated the dog's attack on S.R. According to S.R., Williams directed his pit bull to attack her. But according to Williams, the dog came to his defense after he was attacked by S.R. The record also contains testimony from Allen, a completely neutral third party who witnessed Williams command the dog to attack S.R.

{¶28} The credibility of both S.R. and Williams is subject to attack. S.R. admitted that she had smoked and taken drugs just before this incident and that she could not recall a large portion of the events that occurred. And Williams's testimony conflicted on several key points with that offered by other witnesses. While Williams testified that his fight with S.R. was caused by her taking offense to a crude joke, he told Officer Cromwell that the two argued after he asked S.R. if she was in love with him. Williams also testified that he only threw one outfit and a pair of shorts out the door to S.R., but Allen testified that Williams threw both clothing and a suitcase outside. Notably, Officer Cromwell's body-worn camera footage corroborated Allen's testimony on this point and depicted a suitcase and a large pile of clothing on the sidewalk outside of Williams's home.

{¶29} An additional discrepancy in the testimony between Williams and Allen concerned how S.R. exited from the home. While Williams testified that he handed S.R. off to her cousin, Allen testified that a naked S.R. was thrown out of the door. Allen's testimony never referenced a third person.

{¶30} Ultimately, the record contained testimony from an independent witness who personally saw Williams order his dog to attack S.R. Williams's version of events was not corroborated by Allen's testimony or the responding officer's body-worn camera, and was, in fact, contradicted by both. On this record, the evidence of Williams's guilt was overwhelming, and there is not a reasonable probability that the outcome of the trial would have been different but for the prosecutor's improper remarks in closing arguments. We accordingly hold that Williams has failed to establish plain error and overrule the first assignment of error.

### III. Manifest Weight

**{¶31}** In his second assignment of error, Williams argues that his conviction for felonious assault is against the manifest weight of the evidence.

**{¶32}** When reviewing a challenge to the manifest weight of the evidence, this court must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "'When evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment.'" *State v. Jordan*, 2022-Ohio-2566, ¶ 58 (1st Dist.), quoting *In re J.C.*, 2019-Ohio-4027, ¶ 20 (1st Dist.).

**{¶33}** As set forth in our plain-error discussion under the previous assignment of error, the record contains conflicting testimony from S.R. and Williams regarding the events that led to the attack on S.R. The record also contains testimony from Allen, an independent witness that saw Williams order his dog to attack S.R. As the trier of fact, the jury was in the best position to judge the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *State v. Shepard*, 2021-Ohio-964, ¶ 62 (1st Dist.). It was entitled to reject Williams's testimony and to believe the testimony offered by Allen that he saw Williams order his dog to attack S.R., as well as S.R.'s testimony that Williams hit her and ordered his dog to attack her. This was not the rare case in which the trier of fact lost its way and committed such a manifest miscarriage of justice in convicting Williams that his conviction must be reversed. *See Powell* at ¶ 16.

{¶34} The second assignment of error is accordingly overruled, and the trial court's judgment convicting Williams of felonious assault is affirmed.

Judgment affirmed.

**BOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.