[Cite as *State v. Shipley*, 2025-Ohio-5001.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

R. SCOTT SHIPLEY,

    DEFENDANT-APPELLANT.

CASE NO. 14-25-02

OPINION AND
JUDGMENT ENTRY

Appeal from Union County Common Pleas Court
Trial Court No. 24-CR-0005

Judgment Affirmed

Date of Decision:  November 3, 2025

APPEARANCES:

    *Dustin M. Blake* for Appellant

    *Andrew M. Bigler* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, R. Scott Shipley ("Shipley"), appeals the December 23, 2024 judgment entry of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an incident at a Marysville, Ohio Walmart on December 11, 2023. As he was exiting the store, Shipley was confronted by Asset Protection Investigator, Alice Sorrell ("Sorrell"), with about $100.79 worth of unpaid Legos in his cart. In response, Shipley pushed the (full) shopping cart past her, striking her, though she was not injured. While loading his vehicle to leave, Shipley then threw a box of Legos in Sorrell's direction.

{¶3} On January 9, 2024, the Union County Grand Jury indicted Shipley on a single count of robbery in violation of R.C. 2911.02(A)(3), (B), a third-degree felony. On January 23, 2024, Shipley appeared for arraignment and pleaded not guilty.

{¶4} The case proceeded to a jury trial on October 28 and 29, 2024. On October 29, 2024, the jury found Shipley guilty of the sole count alleged in the indictment. Notably, the trial court instructed the jury on the lesser-included offense of theft. On December 23, 2024, the trial court sentenced Shipley to five years of community control.

{¶5} Shipley filed his notice of appeal on January 21, 2025. He raises three assignments of error for our review. For ease of our discussion, we will begin by discussing Shipley's first and second assignments of error together, followed by his third assignment of error.

**First Assignment of Error**

**The Finding of Guilt As To The Single Count Of Robbery Is Not Supported By The Sufficiency Of The Evidence**

**Second Assignment of Error**

**The Verdict Of Guilt As To The Single Count Of Robbery Is Against the Manifest Weight Of The Evidence**

{¶6} In his first and second assignments of error, Shipley argues that his robbery conviction is based on insufficient evidence and is against the manifest weight of the evidence. In particular, Shipley contends that his robbery conviction is based on insufficient evidence because the State failed to prove the elements of theft and force. Shipley specifically argues that his robbery conviction is against the manifest weight of the evidence due to the contradictory nature of the testimony and the video evidence failing to show the alleged contact.

*Standard of Review*

{¶7} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Therefore, we address each legal concept individually.

{¶8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶9} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing

court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶10} Shipley was convicted of robbery in violation of R.C. 2911.02, which provides, in its relevant part, that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall . . . "[u]se or threaten the immediate use of force against another." R.C. 2911.02(A)(3). "The element of force (or harm) differentiates robbery from theft." *State v. Muncy*, 2012-Ohio-2830, ¶ 19 (11th Dist.).

{¶11} "The statute 'expressly predicates every robbery on the elements of a completed or attempted "theft offense," including all culpable mental states.'" *State v. Godsey*, 2024-Ohio-629, ¶ 9 (3d Dist.), quoting *State v. Tolliver*, 2014-Ohio-3744, ¶ 8. Ohio's theft statute prohibits a "person, with purpose to deprive the owner of property or services," from "knowingly obtain[ing] or exert[ing] control over either the property or services . . . [w]ithout the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1). Thus, in this case, the requisite

culpable mental state for the robbery offense is satisfied by the mental states of "purpose" and "knowingly" required for the underlying theft offense, and no separate mens rea must be proven for the use of force. *State v. Tussing*, 2024-Ohio-5757, ¶ 17 (3d Dist.); *Tolliver* at ¶ 18.

{¶12} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶13} On appeal, Shipley argues that his robbery conviction is based on insufficient evidence because the State failed to prove the essential elements of theft and force. Although Shipley challenges the sufficiency of the evidence for the theft element in a footnote to his brief, he conceded during oral argument that the theft offense is supported by sufficient evidence. Nevertheless, for the sake of a complete review, we will address his claim. Further, Shipley primarily challenges the force element, contending that the contact with Sorrell was insignificant and caused no actual or potential harm. Accordingly, our analysis will be limited to the sufficiency of the evidence for these two elements.

{¶14} Beginning with the theft element, the State presented sufficient evidence that Shipley knowingly obtained or exerted control over Walmart's property—namely, the Legos—without its consent and with the purpose of depriving Walmart of the merchandise. Under Ohio law, "'a person need not leave a store in order to complete a theft offense under R.C. 2913.02(A)(1); rather, the person must knowingly obtain or exert control over the merchandise with the intent to deprive the owner of the property without the owner's consent.'" *State v. Mayes*, 2024-Ohio-1801, ¶ 31 (2d Dist.), quoting *State v. Brienzo*, 2001 WL 1475808, *1 (9th Dist. Nov. 21, 2001). However, "'[o]nce a person transports merchandise without payment beyond the checkout points, or in a manner designed to conceal the merchandise, he has exercised "control" over the merchandise and can be convicted of shoplifting under R.C. 2913.02(A)(1).'" *Id.*, quoting *State v. Tirabasso*, 2000 WL 1371475, *1 (11th Dist. Sept. 22, 2000).

{¶15} In this case, the State presented evidence that Shipley had unpaid merchandise—the Legos—in his shopping cart when he exited the store. *Compare State v. Ratkovich*, 2003-Ohio-7286, ¶ 21 (7th Dist.) (concluding that appellant "completed the theft, at the latest, when he exited the doors" of the store); *Mayes* at ¶ 32 (analyzing that "the theft offense was completed when Mayes bypassed Rural King's checkout points and walked out of the store's emergency exit with a shopping cart full of merchandise he did not pay for"). Contrary to his contention on appeal, Shipley's argument that he later abandoned the merchandise does not

negate the completed theft offense. Therefore, we conclude that the State presented sufficient evidence that Shipley committed the theft offense.

**{¶16}** Turning to the force element, the Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

> For purposes of R.C. 2911.01(A)(3), the element of force is established "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed."

*State v. Tillison*, 2019-Ohio-1395, ¶ 14 (9th Dist.), quoting *State v. Davis*, 6 Ohio St.3d 91 (1983), paragraph one of the syllabus. "Force is evaluated under an objective standard." *Id.* "In other words, 'evidence of whether the victims actually perceived a threat is not necessary; evaluation of the nature of a threat is subject to an objective, not subjective, test.'" *Id.*, quoting *State v. Sumlin*, 2000 WL 776986, *2 (8th Dist. June 15, 2000). The actions and demeanor of a defendant may support the conclusion that force was threatened." *Id.* "The robbery statute does not require the State to provide evidence that the defendant inflicted physical harm in furtherance of the purpose to commit the theft offense." *Godsey*, 2024-Ohio-629, at ¶ 13 (3d Dist.).

**{¶17}** On appeal, Shipley argues that the State failed to present sufficient evidence of force for several reasons. First, he contends that the evidence was not certain because Sorrell provided conflicting statements about whether the cart struck

her foot or her thigh. However, Sorrell's credibility is an issue for weight of the evidence rather than the sufficiency of the evidence. *Accord State v. Jackson*, 2019-Ohio-1697, ¶ 25 (3d Dist.).

{¶18} Shipley also challenges the evidence of contact, noting it is not visible on video. He argues that even if contact occurred, it was insignificant—a claim he supports with Sorrell's testimony that she was uninjured, unafraid, and refused medical care. Likewise, he contends Sorrell's continued pursuit of him demonstrates she did not perceive a threat. Ultimately, Shipley concludes that his actions were an attempt to avoid Sorrell, not to use force, and therefore the incident did not constitute a robbery.

{¶19} "A shoplifter's use of force in resisting apprehension by store security may constitute sufficient force to establish robbery under R.C. 2911.02." *State v. Petty*, 1995 WL 645572, *4 (12th Dist. Nov. 6, 1995). In the context of shoplifting, courts have consistently found that using one's body to resist a security guard after a theft elevates the crime to robbery under Ohio's robbery statute. *Muncy*, 2012-Ohio-2830, at ¶ 19 (11th Dist.). "Acts that have been held to fall within the statutory definition of force by Ohio courts include pushing or striking a store employee." *Id.*

{¶20} Based on our review of the record before us, we conclude that the State presented sufficient evidence of force to elevate Shipley's theft to a robbery. *See State v. Pillow*, 2008-Ohio-6046, ¶ 23 (2d Dist.). Critically, Shipley's arguments that Sorrell was not injured or afraid are unavailing because the standard for force

is objective and does not require actual harm or a subjective fear from the victim. Likewise, Shipley's claim that he intended only to avoid Sorrell, not to use force, is irrelevant since the robbery statute does not require a separate culpable mental state for the element of force itself. *See Godsey*, 2024-Ohio-629, at ¶ 10 (3d Dist.) (acknowledging that the State is not required to prove a culpable mental state with respect to the use-of-force element in the robbery statute as the section defining the offense makes it clear that the necessary mens rea is satisfied by the culpable mental states of the underlying theft offense).

{¶21} Rather, by striking Sorrell with the (full) shopping cart in his attempt to flee, Shipley used physical violence to resist apprehension. *Compare State v. Grega*, 2013-Ohio-4094, ¶ 62 (11th Dist.) (concluding that "even if Rayel did not sustain any serious injury in the incident, the mere fact that appellant touched her in order to avoid detainment constituted a use of force which elevated the theft offense to a robbery"). This physical struggle to avoid detainment is precisely the conduct that elevates a theft offense to robbery. *See State v. Elliott*, 2023-Ohio-181, ¶ 16 (11th Dist.). Significantly, the jury was instructed on the lesser-included offense of theft but rejected it in favor of the robbery conviction, indicating it found the element of force was proven beyond a reasonable doubt. Therefore, we conclude that the State presented sufficient evidence that satisfied the force element of the offense.

**{¶22}** Consequently, viewing the evidence in a light most favorable to the State, we conclude that the State proved the elements of robbery beyond a reasonable doubt. *See Pillow* at ¶ 24. Thus, Shipley's robbery conviction is based on sufficient evidence.

**{¶23}** Having concluded that Shipley's robbery conviction is based on sufficient evidence, we next address Shipley's argument that his robbery conviction is against the manifest weight of the evidence. In support of his manifest-weight-of-the-evidence argument, Shipley reasserts the claims from his sufficiency of the evidence challenge, contending that the jury lost its way in resolving the disputed facts. Specifically, he argues that the jury should not have credited Sorrell's testimony due to her conflicting statements about where the cart struck her. He further claims that the greater weight of the evidence demonstrates any contact was merely incidental and not the type of force required for a robbery, pointing to Sorrell's lack of injury and her admission that she was not afraid.

**{¶24}** Shipley first argues that his robbery conviction is against the manifest weight of the evidence because the jury should not have credited Sorrell's testimony due to inconsistencies regarding where the cart struck her. However, we will not second-guess the weight that the jury assigned to the evidence that the contact with the shopping cart constituted force, or the jury's witness-credibility determination, unless it is clear that the jury lost its way and a miscarriage of justice occurred. *See State v. Hooper*, 2022-Ohio-2990, ¶ 28 (3d Dist.). "The trier of fact is best able 'to

-11-

view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.), quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24.

{¶25} "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.Z.*, 2011-Ohio-6845, ¶ 79 (11th Dist.), quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "'"A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *State v. Missler*, 2015-Ohio-1076, ¶ 44 (3d Dist.), quoting *State v. Bean*, 2014-Ohio-908, ¶ 15 (9th Dist.), quoting *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.).

{¶26} Furthermore, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Campbell*, 2008-Ohio-4831, ¶ 23 (10th Dist.). The trier of fact "'"may take note of the inconsistencies and resolve or discount them accordingly, [but] such inconsistencies do not render [a] defendant's conviction against the manifest weight or sufficiency of the evidence."'" *State v. Ealy*, 2016-Ohio-1185, ¶ 19 (10th Dist.), quoting *State v. Samatar*, 2003-Ohio-1639, ¶ 113 (10th Dist.), quoting *State v. Craig*, 2000 WL 297252, *3 (10th Dist. Mar. 23, 2000).

{¶27} After reviewing the evidence, we conclude that the jury did not lose its way and create such a manifest miscarriage of justice in its witness-credibility determination. Indeed, the jury heard Sorrell's testimony, including the inconsistency regarding the precise point of impact, and was free to conclude that this minor discrepancy did not undermine the core of her testimony—that is, that Shipley struck her with the shopping cart in his attempt to flee. Furthermore, the jury was able to weigh her testimony against the video evidence of the incident and it was entitled to resolve any conflicts to determine that force was used. Decisively, the jury's decision to credit Sorrell's account is a classic credibility determination that we will not second-guess.

{¶28} Shipley further claims the weight of the evidence—specifically the lack of injury and Sorrell's stated lack of fear—shows the contact was merely incidental. While the jury heard this evidence, it was also instructed on the objective legal standard for force. The jury's conclusion that using a (full) shopping cart to strike a store employee during an attempt to flee constitutes force is a rational finding based on the law. The act of physical resistance itself, not the resulting harm or the victim's subjective reaction, is the key. Therefore, the jury's decision to give more weight to the physical act over the lack of resulting injury or lack of fear was not unreasonable.

{¶29} For these reasons, we conclude that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice that Shipley's robbery

conviction must be reversed and a new trial ordered. Thus, Shipley's robbery conviction is not against the manifest weight of the evidence.

**{¶30}** Shipley's first and second assignments of error are overruled.

### Third Assignment of Error

### Defendant's Right To A Fair Trial Was Prejudiced By Prosecutorial Misconduct.

**{¶31}** In his third assignment of error, Shipley argues that he was deprived of a fair trial due to prosecutorial misconduct. Specifically, he argues that the prosecutor made several improper comments during closing argument that prejudiced the outcome of his trial.

*Standard of Review*

**{¶32}** "'Prosecutors are afforded considerable latitude in closing argument.'" *State v. Rasawehr*, 2020-Ohio-429, ¶ 12 (3d Dist.), quoting *State v. Encarnacion*, 2017-Ohio-5530, ¶ 9 (10th Dist.). A prosecutor may comment on what the evidence has shown and the reasonable conclusions that can be drawn from it. *Id. See also State v. Leonard*, 2004-Ohio-6235, ¶ 159 ("A prosecutor may state an opinion if based on evidence presented at trial."). "However, a prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused, or allude to matters that are not supported by admissible evidence." *Encarnacion* at ¶ 9.

**{¶33}** "'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *Rasawehr* at ¶ 9, quoting *Encarnacion* at ¶ 10. "'A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning.'" *Id.*, quoting *Encarnacion* at ¶ 9. "'Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred.'" *Id.*, quoting *Encarnacion* at ¶ 9.

*Analysis*

**{¶34}** In this case, Shipley argues he was denied a fair trial because the prosecutor, during closing arguments, shifted the burden of proof to the defense by misstating the law, commented on his decision not to testify, and improperly vouched for Sorrell's credibility.

*Misstatements of Law*

**{¶35}** We will first address Shipley's claim that the prosecutor's closing arguments improperly shifted the burden of proof to the defense through misstatements of the law. He points to three specific statements made by the prosecutor. The prosecutor's first statement was, "There is no reason to mention the severity of this offense as far as any consequence except that he wants you to go back there and consider what the punishment will be, if your verdict is guilty. He is asking you to disregard your oath." (Oct. 29, 2024 Tr. at 46). The prosecutor continued, "He wants you to judge the State's evidence contrary to what the Court

is going to tell you and the oath that you took is that you will follow the court not [Shipley]." (*Id.* at 47). The prosecutor concluded, "So, if there was something different that he said that would contradict, then [Shipley] could have subpoenaed him and had him come in and testify." (*Id.*). Shipley objected to each of the prosecutor's comments, and his objections were overruled by the trial court.

{¶36} Importantly, Shipley failed to articulate any specific prejudice as a result of these remarks. *Compare State v. Abdullahi*, 2024-Ohio-418, ¶ 37 (10th Dist.). Notwithstanding Shipley's failure to present an argument to this court, the trial court instructed the jury that closing arguments are not evidence and as to the legal concept of proof beyond a reasonable doubt. "[A] jury is presumed to follow the instructions of the trial court." *Id.* Thus, even if we assume without deciding that the statements were improper, Shipley failed demonstrate that the prosecutor's remarks prejudicially affected his substantial rights since the trial court properly instructed the jury on the law applicable to the burden of proof. *Accord id.*

*Decision Not To Testify*

{¶37} Next, Shipley asserts that the prosecutor improperly commented on his decision not to testify. "Direct comments on a defendant's failure to testify violate the Fifth Amendment's self-incrimination clause." *State v. Smith*, 2023-Ohio-4565, ¶ 137 (2d Dist.). "However, '[a] reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not

-16-

to the silence of the accused, and the jury is instructed not to consider the accused's failure to testify for any purpose.'" *Id.*, quoting *State v. Ferguson*, 5 Ohio St.3d 160 (1983), paragraph one of the syllabus.

**{¶38}** In support of his argument that the prosecutor improperly commented on his decision not to testify in his defense, Shipley directs us to the prosecutor's statement that, "[b]ut the only evidence that was put forth was from the State. And [Shipley] has the absolute right to not take the stand and you are not and I am asking you not to hold that against him in any way, shape or form. But I am pointing out that [Shipley] has the opportunity to rebut the evidence from the State in other ways. (Oct. 29, 2024 Tr. at 9-10). Following Shipley's overruled objection, the prosecutor continued, "Now I'm not asking you to consider the fact that he didn't testify. He has a Constitutional right. But, if there are other reasons for which you should not have believed the State's evidence, [Shipley] had an opportunity to present that." (*Id.* at 10).

**{¶39}** Decisively, the prosecutor's comments were directed at the strength of the State's case and the uncontradicted nature of the evidence, not at Shipley's decision to remain silent. *Accord State v. Hall*, 2014-Ohio-2094, ¶ 22 (2d Dist.). Indeed, the fact that Shipley may have been the only person who could have contradicted the testimony of the witness does not change our analysis. *Id.* Moreover, the trial court instructed the jury not to consider Shipley's decision not to testify for any purpose, and, as we previously stated, juries are presumed to follow

the trial court's instructions. *Id.* Therefore, we conclude that the prosecutor's remarks were not improper in this regard.

*Witness Vouching*

**{¶40}** Finally, we turn to Shipley's claim that the prosecutor improperly vouched for the credibility of the State's key witness, Sorrell. "The law is clear that '[i]t is improper for a prosecutor to vouch for the credibility of a witness at trial.'" *State v. Williams*, 2024-Ohio-5076, ¶ 20 (1st Dist.), quoting *State v. Myers*, 2018-Ohio-1903, ¶ 145. "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Myers* at ¶ 145. "This includes expressing a personal belief or opinion regarding a witness's credibility." *Williams* at ¶ 20. "A prosecutor may, however, 'comment on "considerations that the jury could properly consider in evaluating [a witness's] credibility: his demeanor, consistency, and opportunity to observe, as well as the extent to which other evidence corroborated his testimony.'" *Id.*, quoting *State v. Hayes*, 2020-Ohio-5322, ¶ 43 (1st Dist.), quoting *Myers* at ¶ 147.

**{¶41}** Here, Shipley identifies two specific remarks. In the first instance, the prosecutor stated:

> So, when you go back there, if you find yourself not believing the testimony or not believing the videos, you have to say why not? The only evidence before me, the only testimony before me is that they were telling the truth and that these videos had not been changed or altered in any way. So, the evidence says absolutely true.

(Oct. 29, 2024 Tr. at 9). Shipley further directs us to the prosecutor's statement:

> So, why would she lie? People can lie. But why would she lie? If you don't believe that, you need to ask yourself why don't I believe it? What is that an untrue statement? She had no fog in her memories as to whether or not she was actually struck. Was it on the foot? Was it on the hip? Her statement at the time says that she was hit.

(*Id.* at 20).

{¶42} Because trial counsel did not object to these statements, they are waived absent plain error. *Accord State v. Stevens*, 2016-Ohio-446, ¶ 54 (3d Dist.). "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 2014-Ohio-1787, ¶ 55 (3d Dist.). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 2015-Ohio-2977, ¶ 63 (3d Dist.). "We may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.* Accordingly, Shipley must show that, absent the prosecutors' statements, the outcome of his trial would be different. *Stevens* at ¶ 55. *See also In re J.G.*, 2025-Ohio-1933, ¶ 48 (8th Dist.) (acknowledging that "the test for plain error and prosecutorial misconduct are essentially the same").

{¶43} When evaluating the prosecutor's closing remarks, it appears the prosecutor was not improperly vouching for the witness, but rather was prompting the jurors to analyze the evidence. *See State v. Howell*, 2016-Ohio-7749, ¶ 30 (5th Dist.). Indeed, the prosecutor's statements, while coming close to expressing a personal opinion, were ultimately directed at urging the jury to fulfill its role of determining the credibility of the witnesses based on the evidence presented in

court. *See State v. Sommerfield*, 2007-Ohio-6427, ¶ 7 (3d Dist.). This is a crucial function of the jury and falls within the bounds of a proper closing argument. *See State v. Lester*, 2008-Ohio-6070, ¶ 43 (3d Dist.). Consequently, we reject Shipley's contention that the prosecutor improperly vouched for Sorrell's credibility during closing arguments. Thus, the prosecutor's statements did not amount to plain error.

{¶44} Shipley's third assignment of error is overruled.

{¶45} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

Case No. 14-25-02

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge


_____
John R. Willamowski, Judge

DATED:
/hls