[Cite as *State v. Hunt*, 2020-Ohio-1124.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2019 AP 07 0023 |
| KOLT HUNT | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Tuscarawas County
Court of Common Pleas, Case No. 2018
CR 07 0231

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 23, 2020

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

AMANDA K. MILLER          PATRICK J. WILLIAMS
Assistant Prosecuting Attorney          300 E. Third Street, Suite #1
Tuscarawas County          Dover, Ohio  44622
125 East High Avenue
New Philadelphia, Ohio  44663

*Hoffman, P.J.*

{¶1} Defendant-appellant Kolt Hunt appeals his convictions and sentence entered by the Tuscarawas County Court of Common Pleas, on two counts of child endangering, following a jury trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On July 13, 2018, the Tuscarawas Grand Jury indicted Appellant on one count of child endangering, in violation of R.C. 2919.22(B)(1) and (E)(2)(d), a felony of the second degree; and one count of child endangering, in violation of R.C. 2919.22(A) and (E)(2)(c), a felony of the third degree. The victim in both counts was the 23 month old son of Angel Kennedy, Appellant's live-in girlfriend. Appellant appeared for arraignment on August 3, 2018, and entered a plea of not guilty to the Indictment.

{¶3} The matter proceeded to trial on May 7, and 8, 2019. The following evidence was adduced at trial.

{¶4} At approximately 1:30 p.m. on Wednesday, May 16, 2018, Angel Kennedy delivered her 23 month old toddler ("the Child") to All About Children Daycare. Kennedy typically brought the Child to the daycare around this time each day. Appellant picked up the Child around 6 p.m. each day. When Kennedy and the Child arrived, the Child immediately reached for Donna Dickey, the toddler room teacher, and went right into her arms. Dickey testified the Child's behavior was unusual as "[h]e always cried and clung to his mom usually when she was dropping him off." Tr. at 67. Kennedy advised Dickey the Child was hurt, and lifted the back of his shirt to expose a bruise. When Dickey expressed concerns about the painfulness of the bruise, Kennedy responded, "yeah he fell, he's okay, he's clumsy." *Id.* at 68. Kennedy then left.

{¶5} After her assistant arrived to cover the room during her lunch break, Dickey took the Child to the daycare office. She removed his shirt and observed multiple bruises. Upon further examination, Dickey found bruising on the Child's face, neck, and shoulder as well as the outside and inside of the Child's right ear. Because she suspected the injuries were the result of abuse and because she is a mandated reporter, Dickey contacted Tuscarawas County Department of Jobs and Family Services ("TCJFS"). Dickey described the Child as "very clingy and wanted held." *Id.* at 72. She recalled the Child cried when she changed his diaper, which was unusual.

{¶6} Mandy Prosser, the intake supervisor at TCJFS, testified the Agency received a call from All About Children on May 16, 2018, in regards to a small child with marks and bruises on his body. Prosser proceeded to the daycare and spoke with Dickey, who was holding the Child. Upon Prosser's request, Dickey removed the Child's shirt. Prosser observed marks over his entire back and immediately contacted the sheriff's office. Prosser described the marks as "severe" and knew, based upon the Child not yet being two years old, "it was not accidental injuries." *Id.* at 80. While she waited for an officer to respond, Prosser documented the Child's injuries. At trial, Prosser described the injuries depicted in the photographs she had taken. Prosser noted a portion of the Child's back was swollen. Prosser relayed the situation to the attorney for TCJFS, who immediately sought and received an ex-parte order for immediate custody. The Child was taken to Akron Children's Hospital later that day.

{¶7} Chief David Warrick of the Strasburg Police Department was dispatched to All About Children in New Philadelphia on May 16, 2018, after the department received a call from Mandy Prosser. Upon his arrival, Chief Warrick met with Mrs. Pruett, the

director; Donna Dickey; and Prosser.  Dickey brought the Child into the room, and showed his injuries to Chief Warrick.  Chief Warrick took digital photographs of the injuries.  Chief Warrick spoke with Angel Kennedy, who had returned to the daycare.   Appellant subsequently arrived at the daycare.   Chief Warrick advised Appellant he needed to speak with him and instructed Appellant to meet him at the police department.

{¶8}   Chief Warrick and Patrolman Burton interviewed Appellant.   Appellant admitted he had hit or smacked the Child on the back three of four times two days earlier.  When Appellant was shown pictures of the Child's injuries, he indicated where his hand was on the Child's back when he struck the Child.

{¶9}   Dr. Bruce Benton, a pediatric emergency medicine fellow at Akron Children's Hospital, testified he examined the Child on May 16, 2018, when the Child was presented at the emergency room.   During his examination of the Child, Dr. Benton observed what initially appeared as a very large bruise on the Child's back, but was "probably multiple blows because there are multiple linear injuries, which would not be consistent with just one injury."  Tr. at 109.  Dr. Benton added, "And then the ear is probably another blow of some sort in addition to the one on the forehead."  Tr. at 109-110.  Dr. Benton explained it is not very common for a child the age of the Child "to speak much, if at all, especially with a new person."  Tr. at 110.  Most children of that age are not able to articulate the level of pain he or she is experiencing or explain how an injury occurred.

{¶10} Dr. Benton ordered a head CT, a skeletal survey, and blood tests to determine if there was internal bleeding and/or injury to the liver.  The doctor explained he ordered the tests because the force required to cause the amount of bruising the Child

sustained could also cause internal injuries.  The tests revealed the Child did not have any fractures or internal injuries.  Dr. Benton determined the Child experienced non-accidental trauma consistent with child abuse.  Dr. Benton unequivocally stated, when the multiple blows were inflicted upon the Child, the Child "absolutely" would have felt pain, and the Child "most likely" would have been uncomfortable on May 16, 2018.  The doctor noted a twenty-three month old children do not always cry when they are in pain and do not always show outward signs they are in pain.  Dr. Benton indicated the bruising around the Child's ear could not be self-inflicted.  A child pulling on his ear due to an ear infection could not cause the level of bruising the Child had on his ear.

{¶11} After hearing all of the evidence and deliberating, the jury found Appellant guilty of both counts of child endangering.

{¶12} It is from his convictions and sentence Appellant appeals, raising the following assignments of error:


I. THE VERDICT OF THE JURY WAS AGAINST THE EVIDENCE AS THERE WAS INSUFFICIENT EVIDENCE OF SERIOUS PHYSICAL HARM.

II. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

III. THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT WHICH EFFECTIVELY DENIED DEFENDANT DUE PROCESS OF LAW.

I.

{¶13} In his first assignment of error, Appellant challenges his convictions as against the manifest weight and based upon insufficient evidence.

{¶14} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶15} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶16} "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212

(1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

{¶17} Appellant was convicted on one count of child endangering, in violation of R.C. 2919.22(A) and (E)(2)(c), which provide:

No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

(E)(2) * * * (c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree.

{¶18} Appellant was also convicted on one count of child endangering, in violation of R.C. 2919.22(B)(1) and (E)(2)(d), which provide:

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

Abuse the child.

* *

(E)(2) * * * (d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree.

**{¶19}** Appellant argues the state failed to prove the essential element of "serious physical harm". "Serious physical harm" is defined by R.C. 2901.01(A)(5) as any of the following:

Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

Any physical harm that carries a substantial risk of death;

Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶20}** "The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.'" *State v. Irwin,* 7th Dist. Mahoning No. 06MA20, 2007-Ohio-4996. Under certain circumstances, a bruise can constitute serious physical harm because a bruise may satisfy the statutory requirement for temporary serious disfigurement. *State v. Worrell,* 10th Dist. Franklin No. 04AP-410, 2005-Ohio-521, at ¶ 47–51, reversed on other grounds by *In re Criminal Sentencing Statutes Cases,* 109 Ohio St.3d 313, 847 N.E.2d 1174, 2006-Ohio-2109; see also, *State v. Payne,* 8th Dist. Cuyahoga 76539 (July 20, 2000) [bloody cut, swollen eye are temporary, serious disfigurement]; *State v. Plemmons–Greene,* 8th Dist. Cuyahoga No. 92267, 2010-Ohio-655, [black eye, bruising, swelling to right side of face, scratches on neck, and bruising on thighs and buttocks].

**{¶21}** Upon review of the evidence as set forth in the Statement of the Case and Facts, supra, as well as the testimony and physical evidence presented at trial, we find Appellant's convictions were not against the manifest weight and were based upon sufficient evidence. Mandy Prosser noted the extensive bruising and swelling on the Child's back and ear despite two days having passed since the beating Appellant admitted to inflicting. Donna Dickey testified the Child cried when she placed him on his back to change his diaper. Dickey also described the Child as "clingy", which was not his

usual demeanor. Tr. at 72.  Dr. Benton indicated the force necessary to cause the level of bruising he observed on the Child could cause internal injuries.    Dr. Benton unequivocally stated, when the multiple blows were inflicted upon the Child, the Child "absolutely" would have felt pain, and the Child "most likely" would have been uncomfortable days later on May 16, 2018.  Although the Child could not verbalize the level or duration of the pain he experienced, the trier of fact heard ample evidence upon which it could find the injury caused serious physical harm to the Child.

**{¶22}**  Based upon the foregoing, Appellant's first assignment of error is overruled.

II.

**{¶23}**  In his second assignment of error, Appellant contends trial counsel was ineffective for failing to object to Dr. Benton's testimony regarding the pain the Child would have experienced during and after Appellant beat him.  Appellant submits Dr. Benton's testimony was merely the opinion of a lay witness; therefore, was inadmissible pursuant to Evid. R. 701.  We disagree.

**{¶24}**  Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability

of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶25}** Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, *quoting Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶26}** Appellant argues Dr. Benton's testimony should have been excluded under Evid. R. 701. Evid. R. 701, which governs opinion testimony by lay witnesses, reads:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

**{¶27}** During his direct testimony, Dr. Benton detailed his education, skill, training, and experience as a pediatric emergency medicine doctor. Dr. Benton noted he has been

practicing for ten years and actively participates in research and publication. Dr. Benton described the protocols and tests he conducts to reach his diagnosis and the appropriate treatment of a presenting child. Following this dialogue, the state asked Dr. Benton whether the Child would have experienced pain when struck by Appellant as well as days later when the Child was presented at the hospital. We find this testimony was rationally based on Dr. Benton's perception of the Child during treatment and also aided the jury in determining a fact in issue regarding the charges of endangering children. As such, an objection to this testimony would not have had a reasonable probability of being sustained.

**{¶28}** We find counsel's performance did not fall below an objective standard of reasonable representation nor was it violative of any of his or her essential duties to Appellant. Accordingly, we overrule his second assignment of error.

III.

**{¶29}** In his final assignment of error, Appellant asserts the prosecutor committed prosecutorial misconduct during closing arguments, which resulted in Appellant effectively being denied due process.

**{¶30}** "Prosecutors are afforded considerable latitude in closing argument." *State v. Encarnacion*, 10th Dist. Franklin No. 16AP-817, 2017-Ohio-5530, ¶ 9, citing *State v. Ballew*, 76 Ohio St.3d 244, 255 (1996). "A prosecutor may comment on ' "what the evidence has shown and what reasonable inferences may be drawn therefrom." ' " *Id.*, quoting *State v. Lott*, 51 Ohio St.3d 160, 165 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970), and citing *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 159 ("A prosecutor may state an opinion if based on evidence presented at trial."). *See*

*State v. McGuire*, 3d Dist. Allen No. 1-13-47, 2015-Ohio-1887, ¶ 81 ("In closing arguments, prosecutors are entitled to some latitude regarding what the evidence has shown and the inferences that can be drawn."), citing *Ballew*, supra at 255.

**{¶31}** "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Encarnacion*, supra at ¶ 9, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning." *Id.*, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868 (1974). "Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred." *Id.*, citing *Noling* at ¶ 94, citing *State v. Frazier*, 73 Ohio St.3d 323, 342 (1995).

**{¶32}** During the state's rebuttal closing argument, the Prosecutor remarked:

> And so I leave you with this. Imagine that those bruises are on your back. You've been sitting here for two days. Would your back be against the back of that chair? If your back looked like that, would you have slept on your back the past two nights? Would you be eating handfuls of Tylenol? If your back * * * If your back looked like that, would you be holding yourself still, trying not to move, trying not to flinch and cause a flash of pain. Now imaging [sic] if you were twenty-three months old. Thank you.

**{¶33}** Tr. at 135-136.

**{¶34}** The trial court overruled defense counsel's objection to the Prosecutor's remarks.

**{¶35}** The trial court instructed the jury, in pertinent part:

Evidence is all the testimony received from the witnesses, the exhibits admitted during trial, facts agreed to by counsel, and any facts which the court requires you to accept as true.  Evidence may be direct or circumstantial or both.  Direct evidence is the testimony given by a witness who has seen or heard the facts about which the witness testifies.  It includes exhibits admitted into evidence during trial.  Circumstantial evidence is proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of people.  To infer or to make an inference is to reach a reasonable conclusion of fact which you may but are not required to make from other facts which you find have been established by direct evidence.  * * * The evidence does not include the indictment, opening statements, or closing arguments of counsel.  The opening statements and closing arguments are designed to assist you.

**{¶36}** Tr. at 137-138.

**{¶37}** We find the prosecutor's comment was tantamount to asking the jurors to place themselves in the shoes of the victim.  We find such was improper.  See, *State v.*

*Hart*, 8th Dist. No 79564, 2002-Ohio-1084, *3.  However, we find the prosecutor's isolated comment during closing argument did not prejudicially affect Appellant's substantial rights in light of all the evidence and the trial court's admonition as to the limited purpose of closing argument.

**{¶38}** Appellant's third assignment of error is overruled.

**{¶39}** The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Delaney, J.  and

Baldwin, J. concur