[Cite as *State v. Upkins*, 2026-Ohio-770.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

LAMONE E. UPKINS,

    DEFENDANT-APPELLANT.

CASE NO. 17-24-12

OPINION AND
JUDGMENT ENTRY

Appeal from Shelby County Common Pleas Court
Criminal Division
Trial Court No. 23CR000087

**Judgment Affirmed**

**Date of Decision: March 9, 2026**

APPEARANCES:

    *Victoria Bader* and *Annabelle Comunale* for Appellant

    *Michael P. Doyle, Jr.* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Lamone Upkins ("Upkins"), appeals the September 30, 2024 judgment of sentence of the Shelby County Court of Common Pleas. For the reasons that follow, we affirm.

*Facts & Procedural History*

{¶2} This case arises from a series of drug buys between Upkins and a confidential informant in August and September of 2021. On April 13, 2023, the Shelby County Grand Jury indicted Upkins on six counts[1]: Counts One and Four of trafficking in drugs in violation of R.C. 2925.03(A)(1), fifth-degree felonies; Count Two of aggravated trafficking of drugs in violation of R.C. 2925.03(A)(1), a third-degree felony; Counts Three and Five of trafficking in drugs in violation of R.C. 2925.03(A)(1), fourth-degree felonies; and Count Six of intimidation of a witness in a criminal case in violation of R.C. 2921.04(B)(2), a third-degree felony. Counts One, Three, and Four involved cocaine, Count Two involved methamphetamine, and Count Five involved buprenorphine (suboxone). Further, Counts Two, Three and Five alleged that the trafficking-in-drugs offenses occurred in the vicinity of a school.

---

[1] Upkins was previously indicted in Shelby County case number 22-CR-180 on five counts identical to Counts One through Five. However, on April 12, 2023, at the request of the State, the trial court dismissed the case without prejudice. The following day, the indictment in the instant case was filed.

{¶3} Trial counsel entered a notice of appearance on July 26, 2023, and that same day, Upkins appeared for arraignment and entered not-guilty pleas to the charges in the indictment. On February 22, 2024, the trial court entered a nolle prosequi dismissing Count Six of the indictment without prejudice.

{¶4} A jury trial was held on February 27 and 28, 2024. At the conclusion of the trial, the jury found Upkins guilty of all counts with the exception that the jury did not find Count Three was committed within the vicinity of a school. The trial court accepted the jury's verdicts, found Upkins guilty, and continued the matter for the preparation of a presentence investigation report. The trial court filed its judgment entry of conviction on February 29, 2024.

{¶5} At the sentencing hearing held on September 26, 2024[2], the trial court sentenced Upkins to 12 months in prison on each of the five counts. The trial court ordered the sentences to be served consecutively to each other for an aggregate term of 60 months in prison. The judgment entry of sentence was filed on September 30, 2024.

{¶6} On appeal, Upkins raises three assignments of error for our review. For ease of discussion, we will address the assignments of error in an order that facilitates our resolution of the case.

---

[2] The sentencing hearing was initially scheduled for March 29, 2024. However, Upkins failed to appear for sentencing. As a result, the trial court ordered a warrant for Upkins's arrest, and the sentencing hearing was delayed.

## Second Assignment of Error

**Mr. Upkins' conviction was against the manifest weight of the evidence. U.S. Const., Amends. V and XIV; Ohio Const., art. I, § 10 and 16.**

{¶7} In his second assignment of error, Upkins argues that his convictions are against the manifest weight of the evidence. In support of this contention, Upkins challenges the credibility of the confidential informant and the quality of the video and audio recordings of the drug buys.

*Standard of Review*

{¶8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determin[e] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's

judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 129.

*Upkins's Offenses*

{¶9} Upkins was convicted of five counts of trafficking in drugs in violation of R.C. 2925.03(A)(1) which provides, in relevant part, that "[n]o person shall knowingly . . . [s]ell or offer to sell a controlled substance or a controlled substance analog[.]" Counts One, Three, and Four involved cocaine, Count Two involved methamphetamine, and Count Five involved buprenorphine (suboxone). Further, the jury found that Counts Two and Five were committed in the vicinity of a school, thereby elevating those offenses to a third-degree and fourth-degree felony, respectively. *See* R.C. 2925.03(C)(1)(b). The Ohio Revised Code defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

*Trial Testimony*

{¶10} At trial, the confidential informant testified to a series of controlled drug buys from Upkins that took place in August and September of 2021. The

-5-

confidential informant testified he approached law enforcement to inquire about working as an informant because he "was in a bad spot [and] needed money." (Feb. 27-28, 2024 Tr. at 102). According to the confidential informant, he received about $70 for each controlled buy.

{¶11} The confidential informant stated that he purchased drugs from Upkins on five separate occasions: August 30, 2021; September 16, 2021; twice on September 17, 2021; and again on September 22, 2021. During those encounters, the confidential informant recalled that he purchased methamphetamine, crack cocaine, marijuana, and suboxone (buprenorphine) from Upkins.

{¶12} The confidential informant admitted that he has previously been convicted of several felonies, but stated that he was being honest in his trial testimony. The confidential informant specifically denied "setting up" Upkins.

{¶13} The law-enforcement officers involved in the controlled buys, Sergeant Ethan Brown ("Sergeant Brown") and Detective Mark Brunson ("Detective Brunson"), testified regarding the series of controlled buys involving Upkins and the confidential informant. The officers outlined the procedure involved in the confidential buys including briefing the confidential informant, searching the informant and his vehicle before the buys, outfitting the informant with a recording device, observing the buys as closely as was practical under the circumstances, debriefing with the confidential informant after the buys, searching the informant and his vehicle a second time, and processing the suspected drugs as evidence.

{¶14} The officers detailed each of the five buys. With respect to the first buy on August 30, 2021, Detective Brunson testified that the buy took place at Upkins's residence at 2315 Collins Drive, Apartment K, in Sidney, Shelby County, Ohio. The officers listened to the transmission of the recording device in real time and heard the confidential informant make contact with Upkins at his apartment door. Detective Brunson observed "minimal talking" with much of the audio inaudible. (Feb. 27-28, 2024 Tr. at 141-142). After the buy, the confidential informant handed over suspected crack cocaine. Subsequent forensic testing identified the substance as containing cocaine. (*See* State's Ex. No. 2).

{¶15} The second buy occurred at 1525 Kenwood Drive in Sidney, Shelby County, Ohio. Detective Brunson stated that, at this location, he and Sergeant Brown were able to be close enough to observe the transaction taking place. Furthermore, the officers recorded a phone conversation between Upkins and the confidential informant arranging for the buy. After the purchase, the confidential informant turned over suspected methamphetamine and marijuana. Due to the small quantity of the suspected marijuana, it was not sent to the lab for identification. However, the forensic laboratory identified the other substance as methamphetamine. (*See* State's Ex. No. 3). The video recording made by Detective Brunson during the second buy was played for the jury. Detective Brunson identified Upkins and the confidential informant talking. The video depicts Upkins

pulling something out of his pocket and handing it to the confidential informant. Detective Brunson identified that exchange as the drug purchase.

{¶16} The third and fourth buys both occurred on September 17, 2021. During the third buy, Upkins got into the confidential informant's vehicle at 1525 Kenwood Drive Apartments and the informant drove Upkins to the Collins Drive apartments. In the recording of the third buy, the confidential informant and Upkins discussed drugs. After that buy, the confidential informant provided the officers with a substance that subsequent laboratory testing confirmed to be cocaine. (*See* State's Ex. No. 4).

{¶17} After debriefing from the third buy, officers recorded a phone call between the confidential informant and Upkins setting up the fourth buy. Detective Brunson testified that the fourth buy took place later that same day at 2315 Collins Drive, Apartment J. In the video recording of that transaction, a hand-to-hand transaction can be seen; however, Upkins's face is not visible in the recording. The substance provided to officers from the confidential informant was subsequently sent to the laboratory and confirmed to be cocaine. (*See* State's Ex. No. 5).

{¶18} Detective Brunson testified that the fifth buy occurred on September 22, 2021. Although the audio recordings of the transaction were poor quality, the video recording was played for the jury and depicts the confidential informant entering the 1525 Kenwood Drive apartments. A short time later, the confidential informant provided the officers with buprenorphine. (*See* State's Ex. No. 6).

{¶19} After the State rested, Upkins took the stand in his own defense.

{¶20} According to Upkins, he was familiar with the confidential informant because Upkins is the property manager of the Collins Drive apartments, and the confidential informant would sell tools in the parking lot. Upkins admits to buying tools from the confidential informant in the summer of 2021, but he denied selling the confidential informant drugs. Upkins claimed that the confidential informant was "setting [him] up." (Feb. 27-28, 2024 Tr. at 257).

*Analysis*

{¶21} Upkins contends that his convictions are against the manifest weight of the evidence on the grounds that the testimony of the confidential informant and the audio and video recordings of the buys were unreliable.

{¶22} With respect to his argument that the confidential informant's testimony is unreliable, Upkins asserts that the confidential informant "presented a pattern of confusion, contradiction, and self-interest." (Appellant's Brief at 17). Specifically, Upkins alleges that the confidential informant was unable to distinguish the facts in the instant case with other controlled buys he conducted with another target.

{¶23} In support of his allegations that the confidential informant struggled to distinguish the facts in the instant case with other controlled buys he was involved with, Upkins points to his counsel's cross-examination of Detective Brunson. In that cross-examination, Detective Brunson read from a transcript of a recent trial

involving the confidential informant and another target. Upkins contends that the testimony from that transcript[3] supports a finding that the apartment number that the confidential informant referenced in his testimony[4] actually belonged to the target in the other case.

{¶24} Upkins further challenges the confidential informant's credibility on the grounds that the confidential informant had numerous prior felony convictions and that he gave inconsistent statements regarding his motive for participating in the controlled buys. Specifically, the informant testified at the trial in the instant case that he was compensated monetarily by the police for participating in the controlled buys. However, he was confronted with testimony from a previous trial involving an unrelated defendant in which the informant apparently testified that he did not receive rewards for conducting controlled buys.

{¶25} "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's version of the events." *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). "'Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of

---

[3] Portions of the transcript of the recent trial involving another target of controlled buys conducted by the confidential informant were read into the record in an attempt to impeach several witnesses. However, the transcript from the unidentified trial was not entered into the record. Accordingly, it is not part of the record on appeal.

[4] The record indicates that the target of another series of drug buys involving the same confidential informant lived in another apartment in the same building as Upkins.

fact.'" *State v. Cox*, 2022-Ohio-571, ¶ 20 (3d Dist.), quoting *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.), citing *DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. "'The trier of fact is best able "to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony."'" *State v. Brentley*, 2023-Ohio-2530, ¶ 33 (3d Dist.), quoting *Banks* at ¶ 13, quoting *State v. Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶26} Notably, the jury had the opportunity to observe the confidential informant at trial. Furthermore, the jury was confronted with the purported minor inconsistencies in the confidential informant's testimony as well as his felony convictions. Through cross examination, the alleged inconsistencies in the testimony, such as inconsistencies in the apartment number, total number of controlled buys executed by the confidential informant, and motive were brought to the attention of the jury. Yet, based on our review of the record, it is clear that the jury found the confidential informant to be credible. Furthermore, although Upkins suggests that the confidential informant "set him up" in some way, the jury would have also heard the testimony of Sergeant Brown and Detective Brunson outlining the procedures they undertake in cases involving confidential informants, such as searching the informants and their vehicles prior to and after controlled buys, fitting the informant with recording equipment, and observing the buys as best they can.

"[I]t is within the province of the jury to parse out the credible portions of the witnesses' testimonies[.]" *State v. Waller*, 2023-Ohio-493, ¶ 20 (3d Dist.). The record sufficiently supports the jury's credibility assessments, and we find no basis to alter its analysis.

{¶27} Finally, Upkins challenges the weight of the evidence on the grounds that the audio and video recordings of the controlled buys were not always clear. Indeed, some portions of the audio and video recordings were difficult to see and hear. However, there were portions of the audio and video recordings that corroborated the testimony of the confidential informant and the law enforcement testimony. Most notably, in the second controlled buy, the detectives were able to observe the transaction take place, and at trial, were able to denote where in the video recording the transaction took place.

{¶28} Upkins's second assignment of error is overruled.

### First Assignment of Error

**Prosecutorial misconduct denied Mr. Upkins a fair trial and due process of law. U.S. Const., Amends. V, VI, and XIV; Ohio Const., art. I, § 10 and 16.**

{¶29} In his first assignment of error, Upkins argues that he was denied a fair trial and due process of law as a result of alleged prosecutorial misconduct. Specifically, Upkins contends that the trial court committed plain error by allowing allegedly improper statements during the State's opening statement and closing argument.

*Applicable Law*

**{¶30}** The test regarding prosecutorial misconduct in opening statements or closing arguments is whether the conduct or remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984) (involving closing argument); *State v. Nicholson*, 2024-Ohio-604, ¶ 266, 281-282 (involving opening statement). "[I]t is not enough that there be sufficient other evidence to sustain a conviction in order to excuse the prosecution's improper remarks." *Smith* at 15. "Instead, it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found [the] defendant guilty." *Id.*; *State v. Knuff*, 2024-Ohio-902, ¶ 238 (a conviction may be upheld in the face of a prosecutor's improper remarks when it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the comment); *In re J.G.*, 2025-Ohio-1933, ¶ 48 (8th Dist.) (acknowledging that "the test for plain error and prosecutorial misconduct are essentially the same"). "'[T]he focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor.'" *State v. McKelton*, 2015-Ohio-4228, ¶ 13 (12th Dist.), quoting *State v. Gray*, 2012-Ohio-4769, ¶ 56 (12th Dist.).

**{¶31}** When there is no objection at trial to the alleged prosecutorial misconduct, we review the issue for plain error. *Nicholson* at ¶ 281 (opening statements); *State v. Ballew*, 76 Ohio St.3d 244, 254-255 (1996) (closing arguments); Crim.R. 52(B). *See State v. White*, 82 Ohio St.3d 16, 22 (1998) ("Since

defense counsel failed to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error."). "To qualify for plain-error relief, the appellant must establish: (1) occurrence of an error, i.e., a deviation from a legal rule; (2) the error was plain, i.e., it was an obvious defect in the trial proceedings; and (3) the error affected the appellant's substantial rights, meaning the error 'must have affected the outcome of the trial.'" *State v. Cass*, 2024-Ohio-2614, ¶ 57 (3d Dist.), quoting *State v. Morgan*, 2017-Ohio-7565, ¶ 35. In other words, "a reversal for prosecutorial misconduct will not occur unless it is clear that the outcome of the trial would have been different but for the misconduct." *State v. Boles*, 2010-Ohio-5503, ¶ 50 (6th Dist.), citing *State v. Smith*, 14 Ohio St.3d 13, 15 (1984). Additionally, the decision to correct a plain error is discretionary and should be made with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62.

{¶32} "Opening statements serve to inform the jury about that nature of the case and to outline the facts that each party intends to prove." (Emphasis deleted.) *Nicholson* at ¶ 282. "And unless it appears that counsel 'deliberately attempt[ed] to influence and sway the jury by a recital of matters foreign to the case,' remarks made during opening statements cannot form the basis of a misconduct claim." *Id.*, quoting *Maggio v. Cleveland*, 151 Ohio St. 136 (1949), paragraph two of the syllabus.

{¶33} In closing statements, "[t]he prosecution is normally entitled to a certain degree of latitude." *Smith*, 14 Ohio St.3d at 13-14 (identifying types of remarks to be avoided). A prosecutor may comment upon the evidence and suggest the conclusion to be drawn from it. *State v. Stevens*, 2016-Ohio-446, ¶ 71 (3d Dist.). However, "[a] closing argument that goes beyond the record may constitute prejudicial error," "particularly where the remarks call for the jury to convict to meet a public demand." *State v. Moritz*, 63 Ohio St.2d 150, 157 (1980). "'A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning.'" *State v. Rasawehr*, 2020-Ohio-429, ¶ 13 (3d Dist.), quoting *State v. Encarnacion*, 2017-Ohio-5530, ¶ 10 (10th Dist.). "'Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred.'" *Id.*, quoting *Encarnacion* at ¶ 10.

{¶34} "'Important considerations are whether the misconduct was an isolated incident or a protracted series of improper arguments, whether the defendant objected, whether curative instructions were given, and whether the evidence of guilt was overwhelming.'" *State v. Norales-Martinez*, 2018-Ohio-4356, ¶ 32 (6th Dist.), quoting *State v. Oviedo*, 6th Dist. Lucas No. L-95-287, 1997 Ohio App. LEXIS 3607, *4 (Aug. 15, 1997), citing *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993).

*Analysis*

**{¶35}** Upkins contends that he was denied a fair trial because the prosecutor, during opening and closing arguments made several improper statements. He argues that the alleged statements deprived him of his right to a fair trial and violated his right to due process.

> The State began its opening statement with the following:
>
> Bet you I can tell you something you didn't know when you walked in here today. You're a victim, you're a victim, you're a victim, he's a victim, so am I. You know why? Because that man brought and trafficked drugs in our community.
>
> Drug trafficking is not a victimless crime. It's one that can impact not only an individual but an entire community. And it's your job to determine the guilt or innocence of the Defendant, and I submit to you that this case is actually pretty simple when you get down to it.

(Feb. 27-28, 2024 Tr. at 84).

**{¶36}** From there, the prosecutor reviewed the elements of the offenses and outlined for the jury the evidence it expected to present relating to each of the elements. Then, the prosecutor made the following comment:

> [Defense counsel] is a skilled attorney. She's – this is not her first rodeo, or mine; and she's gonna try – her job is gonna be to throw red herrings at you is what she's gonna try to do. Okay? But don't lose sight of – of the facts. Don't lose sight of what you see, what you hear, and what's presented to you.
>
> Cause what is evidence is testimony of the witnesses, the lab reports showing that these substances are cocaine, methamphetamine, and buprenorphine, and the audio and video recordings you're gonna see.

> Don't lose sight of the fact that the Defendant has made us all, our community, made us all victims in this case. And that's why I implore you to protect our community and to find the Defendant guilty. Thank you.

(Feb. 27-28, 2024 Tr. at 87-88).

{¶37} During his closing statement, the prosecutor reviewed the evidence introduced at trial in relation to each of the statutory elements. Then, the prosecutor attacked the plausibility and credibility of Upkins's testimony and his version of events. At the conclusion of his closing statement, the prosecutor remarked as follows:

> He's trafficked drugs before, and he's done it again, and he's done it in our community, and it's my job to prosecute that. And I would suggest to you, it's your job to look at each of those elements that we just talked about. Use your common sense and find this man guilty as charged. Thank you.

(Feb. 27-28, 2024 Tr. at 268).

{¶38} Specifically, Upkins challenges the prosecutor's statements referring to members of the jury as "victims" of Upkins' criminal activity. Upkins also contests the prosecutor's statements references to his attorney as a "skilled attorney" who is going to "try to throw red herrings" at the jury. Upkins argues that the prosecutor's statements could be taken to imply that his defense counsel's job was to mislead the jury and that she was experienced and skilled at doing so.

{¶39} Upkins also takes issue with the prosecutor's statements that Upkins has "trafficked drugs before" and has "done it again." Upkins claims that the

-17-

prosecutor's statement references an improper propensity argument. Accordingly, Upkins reasons that the statements constituted prosecutorial misconduct and, as a result, he was deprived of his due-process rights and his right to a fair trial.

{¶40} As Upkins concedes, the defense did not object to the opening or closing statement at trial. Thus, we review the issue only for plain error.

{¶41} Although the statements of the prosecutor are troubling, we need not embark upon an analysis of their impropriety. After reviewing the several statements in the context of the trial, we find that Upkins has not established that he qualifies for plain-error relief. Here, even assuming that the prosecutor's comments were inappropriate, Upkins has not shown that a reasonable probability exists that, but for those comments, the trial result would have been different. *See State v. Caudill*, 2025-Ohio-787, ¶ 44 (3d Dist.); *Stevens*, 2016-Ohio-446, at ¶ 75; *Knuff*, 2024-Ohio-902, at ¶ 238, 250. The audio and video recordings relating to the controlled buys, the officers' testimony, and the confidential informant's testimony provided more than ample evidence in support of the jury's verdicts. Thus, even if we assume there was error in allowing the prosecutor's statements, we find beyond a reasonable doubt that, absent the prosecutor's comments, the jury would still have found Upkins guilty. *See Caudill* at ¶ 44; *State v. Yelton*, 2025-Ohio-2391, ¶ 48 (3d Dist.).

{¶42} Upkins's first assignment of error is overruled.

**Third Assignment of Error**

**Mr. Upkins received ineffective assistance of counsel when trial counsel failed to object to the prosecutor's misconduct. U.S. Const., Amends. VI and XIV; Ohio Const., Art I, § 1 and 10; *Strickland v. Washington*, 466 U.S. 668 (1984).**

{¶43} In his third assignment of error, Upkins argues that his trial counsel was ineffective for failing to object to alleged prosecutorial misconduct. Upkins contends that had his counsel objected to the statements referenced in his first assignment of error, "it is probable that the court would have given limiting instructions asking the jury to disregard the comments." (Appellant's Brief at 21). Upkins contends that "because the jury was allowed to consider an array of improper comments when reaching its verdict" he was prejudiced.

{¶44} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 2020-Ohio-3072, ¶ 45 (12th Dist.). A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable

professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶45} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

*Analysis*

{¶46} Upkins argues that his trial counsel was ineffective for failing to object to certain statements during the opening statement and closing argument. Specifically, he argued that the remarks constituted prosecutorial misconduct. However, we find that that Upkins has not demonstrated that he was denied the right to effective counsel.

{¶47} "The failure to make either the deficiency or prejudice showing defeats a claim of ineffective assistance of counsel." *State v. Artis* 2019-Ohio-2070, ¶ 33 (3d Dist.), citing *State v. Frye*, 2015-Ohio-3012, ¶ 11 (10th Dist.), citing

*Strickland*, 466 U.S. 668, at 697. "Thus, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Id.*, quoting *Strickland* at 697.

{¶48} Although Upkins identifies several problematic remarks by the prosecutor, he fails to demonstrate how he was prejudiced by his counsel's failure to object other than to claim that without an objection, the trial court did not recognize the need to issue a limiting instruction to the jury. Notably, Upkins fails to argue how, but for his trial counsel's alleged error, the outcome of his trial would have been different. Furthermore, in our discussion of Upkins's first assignment of error, we found that, in light of the strength of the State's case, Upkins failed to demonstrate that without the prosecutor's inappropriate statements, the outcome of the trial would have been different. Furthermore, although the trial court did not give a limiting instruction in direct response to the prosecutor's statements, the trial court did inform the jury that statements made in opening statements and closing arguments are not evidence. Furthermore, the decision of Upkins's trial counsel not to object to statements relating to Upkins's prior conviction for drug trafficking could have been a strategic decision to avoid drawing attention to the statement. *See State v. Stinebaugh*, 2024-Ohio-2677, ¶ 65 (3d Dist.) ("[T]he decision not to object falls within the realm of trial strategy and does not generally constitute deficient

performance." Thus, we do not find that Upkins has established that he was prejudiced by his counsel's decision not to object to the prosecutor's statements.

**{¶49}** Upkins's third assignment of error is overruled.

*Conclusion*

**{¶50}** For the foregoing reasons, Upkins's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Shelby County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, and WALDICK, J. J., concur.**

Case No. 17-24-12

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.   The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
Mark C. Miller, Judge


_____
John R. Willamowski, Judge


_____
Juergen A. Waldick, Judge

DATED:
/jlm